# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

## JANUARY SESSION, 1997

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 02C01-9609-CC-00293** |
| | ) | |
| Appellee, | ) | |
| | ) | **McNAIRY COUNTY** |
| | ) | |
| **V.** | ) | |
| | ) | **HON. JON KERRY BLACKWOOD,** |
| **JOE NATHAN NICHOLS,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | **(DELIVERY OF SCHEDULE II)** |

FOR THE APPELLANT:

**LLOYD R. TATUM**
Attorney at Law
124 East Main Street
P.O. Box 293
Henderson, TN  38340

FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**ELLEN H. POLLACK**
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN  37243-0493

**ELIZABETH T. RICE**
District Attorney General

**ED NEAL McDANIEL**
Assistant District Attorney General
300 Industrial Park Drive
P.O. Box 473
Selmer, TN  38375

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

The Defendant appeals as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. The Defendant was convicted by a jury of Delivery of Schedule II Drugs, cocaine, less than 0.5 grams in the Circuit Court of McNairy County. He was sentenced to three years and six months as a Range I Standard Offender. The Defendant argues two issues in his appeal. The first issue is whether the Defendant's conviction is barred by the Double Jeopardy provisions of the United States and Tennessee Constitutions. His second issue is whether the evidence was sufficient to support his conviction. We affirm the judgment of the trial court.

The McNairy County Drug Task Force hired two confidential informants, Tracey Hickman and Sandra Gee, to purchase illegal drugs. These two informants set up a drug buy with the Defendant in June 1995. After being fitted with a recorder and given some money by the officers, they met the Defendant in his truck where they purchased a fifty dollar ($50.00) rock of crack cocaine from him. The women gave the cocaine to the officers immediately after they purchased it. The Defendant was arrested in September 1995 after being indicted in this case. Upon being arrested, the authorities took the Defendant's pick up truck, his concrete finishing tools which were in the truck, and $671.00 cash.

At least some of the concrete finishing tools in the possession of the Defendant at the time of his arrest were rented from a third party. These tools

were returned two or three days later to the Defendant so that he could deliver them to the third party. The tools actually owned by the Defendant were returned to him in January. Therefore, the Defendant's tools were kept by law enforcement authorities for approximately four months.

A "Civil Settlement Agreement and Release of Liability" dated January 30, 1996 provided that the Defendant's truck would be forfeited, and the $671.00 would be returned to the Defendant. The Defendant's attorney represented the Defendant in the negotiation of this agreement. The agreement was entered voluntarily, and there was not a hearing held on the forfeiture.

I.

We first address the sufficiency of the evidence. The Defendant argues there was insufficient evidence to support his conviction. When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App.), perm. to appeal denied, id. (Tenn. 1987). Nor may this court reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. Cabbage, 571 S.W.2d at 835. Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

The first witness for the state was the Regional Crime Laboratory Supervisor for the Tennessee Bureau of Investigation Crime Laboratory in Jackson. She testified that the substance which was purchased by the two informants was 0.1 gram of a cocaine base schedule II substance.

The confidential informants, Tracey Hickman and Sandra Gee were also witnesses at the trial. They testified that they purchased undercover narcotics. They were paid every day that they went out and tried to purchase narcotics, whether they were successful or not. On June 9, the day of the incident, the informants met one of the officers, Officer Weaver, and were wired so that Officer Weaver could monitor the conversation. They then went to the Defendant's house, but left because there were people standing outside and someone threatened the informants with a brick. Hickman and Gee then went to a telephone and called the Defendant. They asked the Defendant if he had anything, and he said that he did. The informants met the Defendant, who was by himself, on the road, and they purchased a $50.00 rock of crack cocaine.

Once the purchase had been completed Hickman and Gee met Officer Weaver and gave him the crack cocaine and the recording device.

On cross-examination, the criminal history of the two informants was brought out. Both Hickman and Gee testified that they had used drugs in the past, but were not using drugs during the time period they were working as informants. Ms. Gee denied prostituting herself while acting as an informant.

The next witness was Officer Weaver. He confirmed that Ms. Hickman and Ms. Gee worked with him in an undercover drug operation. Officer Weaver testified that their rent was paid and they were paid $60.00 per day on days that they worked. He testified that the money used to pay them came from the drug fund which is supplied through drug fines and drug seizures. He confirmed the story that the two informants told concerning the drug purchase. After the purchase, he received the crack cocaine and took it to the T.B.I. lab in Jackson for testing. After the testing was complete, he brought it back to the evidence room.

The first witness for the defense was a former employer of the Defendant. He testified that on the day of the incident the Defendant was working for him on a house remodeling project. The next witness for the defense was the Defendant's third cousin, Larry Robinson. Robinson testified that he saw the Defendant on June 9. The Defendant picked up the witness while he was walking to Selmer to help the Defendant load his concrete tools in his truck. He testified that the Defendant kept his tools in his truck. The witness stated that it must have been about 5:00 or 5:30 when the Defendant picked him up and took

the witness to the shop behind the Defendant's house. The witness testified that the first thing they did in the shop was drink some beer. After drinking a couple of cans, they unloaded the tools in the truck. The witness also testified that he knew of the two informants, but he did not know them personally. He stated that he had seen Gee use drugs during the time period that she was an informant. The witness also testified that he had knowledge that Gee prostituted herself.

The defense's next witness was the Defendant's wife, Louise Nichols. She testified that they had been married for 28 years and had children and grandchildren. She stated that the day of the incident she got off work at 3:30 p.m. and got home about 3:40 p.m. She stated that there was no telephone in the shop, but there was a telephone in the house. She said that she did not receive any phone calls from a woman looking for the Defendant, and the Defendant did not answer the phone that day or evening. She stated that Larry Robinson was with the Defendant in his shop all night long. She stated that she would remember if a woman called asking for her husband "[b]ecause if any woman call my house, they don't speak to Joe, anyhow, because I won't let him talk to them."

On cross-examination, the State asked the Defendant's wife how she remembered the incidents of June 9. She stated that she remembered June 9 because the Defendant always tells her where he is going to work and she remembered he was going to work for his employer. She admitted she could not remember June 8 or June 10. She stated she did not remember whether or not the Defendant worked on June 10. The defense then closed its proof.

The Defendant argues in his brief that the testimony of his witnesses was unrefuted and that the informants were unreliable because of evidence of drug use and prostitution. Therefore, the Defendant argues, the evidence is insufficient to support his conviction. However, questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App.), perm. to appeal denied, id. (Tenn. 1987). Nor may this court reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

The jurors who decided this case obviously found the State's witnesses to be more credible than the defense witnesses. As stated above, this court cannot make judgments concerning the credibility of witnesses and must rely on the determination of the jury.

We find that there is sufficient evidence to support the Defendant's conviction. This issue is without merit.

II.

The next issue we will address is whether the Defendant's conviction is barred by the double jeopardy provisions of the United States and Tennessee Constitutions. The Double Jeopardy clause in both the United States and Tennessee Constitutions prohibits multiple punishments for the same offense.

The Defendant argues that the taking of his tools for four months constitutes punishment, so that he cannot be punished for his crime in a criminal court.

The United States Supreme Court recently addressed the question of double jeopardy in connection with forfeiture statutes in <u>United States v. Ursery</u>, 116 S.Ct. 2135 (1996). The Supreme Court stated, "<u>in rem</u> civil forfeiture is a remedial civil sanction, distinct from potentially punitive <u>in personam</u> civil penalties such as fines, and does not constitute a punishment under the Double Jeopardy Clause." <u>Ursery</u>, 116 S.Ct. at 2142. The Court upheld a civil forfeiture based on a federal statute which is almost identical to the Tennessee statute in question here.

This court has held that the <u>Ursery</u> reasoning applies to the statute in question. In <u>State v. Grapel Simpson</u>, No. 02C01-9508-CC-00239, McNairy County (Tenn. Crim. App., Jackson, filed Aug. 2, 1996), this court addressed a situation similar to the one here where forfeiture proceedings were instituted to obtain the defendant's car under the same statute in effect in the case <u>sub judice</u>. In <u>Simpson</u>, this court held that the forfeiture of the defendant's car was constitutional because there was no distinction between the facts of <u>Simpson</u> and that of <u>Ursery</u>. <u>Simpson</u>, No. 02C01-9508-CC-00239, slip. op. at 7-8.

Several facts in this case are important in regard to this issue. At the hearing on the Motion to Dismiss, a carbon copy and a photocopy of a "Notice of Property Seizure and Forfeiture of Conveyances" were introduced as exhibits. The photocopy includes a notation "concrete tools in truck" in a section titled "Other Property," while the carbon copy does not have this notation. This form

also listed the Defendant's truck and $671.00 in currency. Also at the hearing, the Defendant testified concerning the return of his tools prior to the entry of the "Civil Settlement Agreement and Release of Liability." He stated, "[w]ell, I got those tools back through a --- it was supposed to have been a court order document from Memphis." A "Petition for Hearing" to the Commissioner of Safety was also entered as an exhibit at the hearing. The Defendant testified the Petition was a claim to obtain his truck, currency and tools. The petition states that it is in regard to "One 1983 Ford Pick Up Truck VIN #FTCC10AXDUA66491, Tennessee License Plate number 569-DPC and <u>Contents</u>." (Emphasis added). The evidence at the hearing shows that the tools were taken with the truck and the currency.

In <u>State v. David Moore</u>, 02C01-9605-CR-00148, Shelby County (Tenn. Crim. App., Jackson, filed Dec. 19, 1996), this court held that civil forfeiture of property does not implicate double jeopardy when the offender enters into a compromise settlement. In <u>Moore</u>, $6,267 in U.S. Currency was seized. The defendant entered into a settlement whereby all but $1,000.00 was returned to him. The remaining $1,000.00 was forfeited. This court held that the forfeiture of the $1,000.00 did not constitute double jeopardy. If the forfeiture of the money in <u>Moore</u> is not double jeopardy, the seizing of the Defendant's concrete tools which were not forfeited but returned could not be double jeopardy.

The record reflects that the tools were seized for forfeiture along with the Defendant's truck and $671.00. The Defendant treated them as being seized for forfeiture, but they were eventually returned to him, according to his testimony by "a court order document from Memphis." The tools were returned within a

reasonable amount of time.  There was no punishment, therefore, there was no double jeopardy.

This issue is without merit.

We affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, Judge

CONCUR:

_____
PAUL G. SUMMERS, Judge

_____
DAVID G. HAYES, Judge